## IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
## SECOND JUDICIAL DISTRICT

John Brauchle and Abigail Brauchle                                    Plaintiffs

V.                                                                   No.: A2402- **08-184**

State Farm Fire and Casualty Co., and State Farm Ins. Cos.
and John Does I - X and Jane Does I - X                              Defendants

### SUMMONS

TO ANY SHERIFF OR ANY OTHER PERSON AUTHORIZED BY THE MISSISSIPPI RULES OF CIVIL PROCEDURE:
You are hereby commanded to serve this Summons and a copy of the Complaint in this action upon the following:

**STATE FARM FIRE AND CASUALTY CO.**
**c/o William E. Penna, Registered Agent**
1080 River Oaks Drive Suite B-100
Flowood, MS 39232-7644                    or where found

by promptly locating the said Defendant and handing to them a copy of this Summons and Complaint.

### NOTICE TO DEFENDANT
THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT, AND YOU MUST TAKE
IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU ARE REQUIRED TO MAIL OR HAND-DELIVER
A COPY OF A WRITTEN RESPONSE TO THE COMPLAINT TO **Matt G. Lyons**, ATTORNEY FOR THE
PLAINTIFF, WHOSE ADDRESS IS **910 Washington Avenue, Ocean Springs, Mississippi 39564.** YOUR
RESPONSE MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF
DELIVERY OF THIS SUMMONS AND COMPLAINT, OR A JUDGMENT BY DEFAULT WILL BE ENTERED
AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

YOU MUST ALSO FILE THE ORIGINAL OF YOUR RESPONSE WITH THE CLERK OF THIS COURT
WITHIN A REASONABLE TIME AFTERWARD.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT, THIS THE 3 DAY OF DECEMBER, 2008.

GAYLE PARKER, CIRCUIT CLERK
P.O. BOX 235
BILOXI, MS 39533

(SEAL)                          BY: _____
                                   DEPUTY CLERK

# EXHIBIT A

## PROOF OF SERVICE - SUMMONS
### (Process Server)

## STATE FARM FIRE AND CASUALTY CO.
### c/o William E. Penna, Registered Agent
Name of Person or Entity Served

I, the undersigned process server, served the summons and complaint upon the person or entity named above in the manner set forth below (process server mush check proper space and provide all additional information that is requested and pertinent to the mode of service used):

_____ FIRST CLASS MAIL AND ACKNOWLEDGEMENT SERVICE.  By mailing (by first class mail, postage prepaid), on the date stated in the attached Notice, copies to the person served, together with copies of the form of notice and acknowledgement and return envelope, postage prepaid, addressed to the sender (Attach completed acknowledgement of receipt pursuant to M.R.C.P. Form 1B).

___X___ PERSONAL SERVICE.  I personally delivered copies to **STATE FARM FIRE AND CASUALTY CO. c/o William E. Penna, Registered Agent** on the ___ day of DECEMBER, 2008., where I found said person in Hinds County, Mississippi.

_____ RESIDENCE SERVICE.  After exercising reasonable diligence I was unable to deliver copies to said person within _____ county, Mississippi.  I served the summons and complaint on the _____ day of _ _____, 20____, at the usual place of abode of said person by leaving a true copy of the summons and complaint with _____ who is the _____ (here, insert wife, husband, son, daughter or other person as the case may be), a member of the family of the person served above the age of sixteen years and willing to receive the summons and complaint, and thereafter on the ___ dy of _____, 20____, I mailed (by first class mail, postage prepaid) copies to the person served at his or her usual place of abode where the copies were left.

_____ CERTIFIED MAIL SERVICE.  By mailing to an address outside Mississippi (by first class mail, postage prepaid, requiring a return receipt) copies to the person served.  (Attach signed return receipt or the return envelope marked "Refused".)

At the time of service I was at least 18 years of age and not a party to this action.

Fee for service: $_____
Process server must list below: (print or type)

Name:_____
Social Security No.:_____
Address:_____
_____
Telephone No.:_____

State of _____
County of _____
        Personally appeared before me the undersigned authority in and for the state and county aforesaid, the within named _____ who being first by me duly sworn states on oath that the matters and facts set forth in the foregoing "Proof of Service-Summons" are true and correct as therein stated.

_____
Process Server (Signature)

        Sworn to and subscribed before me this the _____ day of _____, 20____.

_____
My Commission Expires:                                    NOTARY PUBLIC

_____

IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
SECOND JUDICIAL DISTRICT

John Brauchle and Abigail Brauchle                                    **Plaintiffs**

V.                                        No. A2402-08-184

State Farm Fire and Casualty Co., and State Farm Ins. Cos.
and John Does I - X and Jane Does I - X                              **Defendants**

FILED
AUG 2 6 2008
GAYLE PARKER, CIRCUIT CLERK
By _____ D.C.

## ORIGINAL COMPLAINT
(Jury Trial Requested)

Plaintiffs, **John Brauchle and Abigail Brauchle**, file their Complaint against

Defendants, **State Farm Fire and Casualty Co.** and **State Farm Ins. Cos.** (State Farm)

and **John Does 1- X** and **Jane Does 1 - V**, and as cause for award of judgment to Plaintiffs

against each and all Defendants will show:

## PARTIES

1.      At all times material, Plaintiffs, John Brauchle and Abigail Brauchle are adult resident

citizens of Biloxi, Harrison County, 2ND Judicial District, Mississippi.

2.      A. Defendant, **State Farm Fire and Casualty Co.,** is an insurance company doing

business within the State of Mississippi which may be served by service on its agent for

service of process, Mississippi's Insurance Commissioner.

B. Defendant, **State Farm Ins. Cos.,** is an insurance company doing business within

the State of Mississippi which may be served by service on its agent for service of process,

Mississippi's Insurance Commissioner.

C. Defendants, **John Does I - X and Jane Does 1 - X,** are *resident citizens of*

*Mississippi* who were/are claims agents of State Farm who wrongfully, tortiously and

intentionally underinsured and 'underadjusted' the plaintiffs' losses, *and others*, individuals,

corporations or other entities who caused or contributed to the injuries and damages of the

Plaintiffs, but whose true identity and/or liabilities have not been ascertained. These

Defendants are, *inter alia*, individually and/or collectively, **State Farm Fire and Casualty**

and any and all companies under the State Farm corporate umbrella and **State Farm Ins.**

**Cos.,** and representatives or employees of State Farm, its agents and State Farm captive

Agencies and **State Farm** that engaged in the underwriting, sale, renewal, administration,

processing, adjusting, review and/or claims-handling of the subject policies of insurance, and/or other persons and entities, *inter alia*, agents, engineers or adjusters who are affiliated with and/or who have acted in concert with Defendants, and who participated in the breaches, omissions and/or torts of those Defendants to such a degree as to make them individually liable to the Plaintiffs under Law, but whose identities and liability are currently unknown. All allegations and claims asserted herein against "State Farm," "Defendant" and/or "Defendants" are incorporated herein by reference against **John Does I -X and Jane Does I - X**. Said John and Jane Does, when their true identities are known and their liability ascertained, will be identified by name and joined here, if needed, pursuant to M.R.C.P.

## VENUE AND JURISDICTION

3.      This Court has jurisdiction of the parties and of the subject matter herein, pursuant to Law, *inter alia*, M. C. A. § § 9-7-81, *et seq*, as the Plaintiffs are seeking damages in excess of the jurisdictional minimum of this Court. Venue is proper here.

### FACTS GIVING RISE TO PLAINTIFFS' CAUSES OF ACTION
### REAL AND PERSONAL PROPERTY INTERESTS INSURED ON 8/29/05 DATE OF *KATRINA*

4.      At all times material, Plaintiffs,John Brauchle and Abigail Brauchle, were owners of *realty* and *personalty* located at **1044** Lafayette St and **1046** Lafayette St. Biloxi, MS.

## Defendants Sold 3 Policies for Losses by Windstorm, Rain, Falling Objects, Flood & Other Causes, But Left the Plaintiffs Underinsured and Underpaid

5.      Defendants sold and issued to Plaintiffs **3 separate policies** of insurance purported to provide "full coverage" for Plaintiffs' said property, i.e., **(1)** a **State Farm Policy** on Plaintiffs' **home** and *personalty* located at **1044** Lafayette St. Biloxi, MS; and a **(2) State Farm Policy** on Plaintiffs' **rental** house and *personalty* located at **1046** Lafayette St. Biloxi, MS and **(3)** only one **Flood Policy** underinsuring **1044** Lafayette St. Biloxi, MS, however, **(4) not** offering, nor selling, **any flood** coverage for **1046** Lafayette St., Biloxi, MS.

6. At all times material, all premiums for the subject policies were paid in full by Plaintiffs.

7. At all times material, all of the subject policies were in full force and effect.

8. A. The **First policy** of the subject policies sold to Plaintiffs and administered by Defendants, **State Farm HO Policy #24-RA-8518-8**, underinsured Plaintiffs' **home** at **1044**

2

Lafayette St. Biloxi, MS, the personal property therein, additional buildings and property, loss of rent and other losses covered by the policy, inter alia, **WINDSTORM, RAIN, FALLING OBJECTS** and other risks that occurred in *Hurricane Katrina* to the Plaintiffs' injuries, losses and damages. A copy of this policy is in Defendants' possession, was requested to no avail, and, on Defendants' production will be attached and incorporated herein as **Exhibit "A."**

B. Plaintiffs' **State Farm Policies** are each an "accidental direct physical loss" policy of insurance (commonly known as an "all risk" policy) drafted by the Defendants. The "loss insured" is "accidental direct physical loss" to Plaintiffs' properties at **1044 &1046** Lafayette St. Biloxi, MS.

C. Plaintiffs' **State Farm policy's cover** expressly states "This policy is one of the **broadest** forms available...." Such *language* and **ISO**'s interpretation of **'broad'** and the *reasonable expectations* created therefrom require that each **State Farm** policy provide a special or *'broad'* form of insurance coverage to Plaintiffs vis a <u>narrow</u> form of coverage.

D.    **State Farm's agents**, in each instance, on each policy sold and issued to Plaintiffs, wrongfully, negligently and/or recklessly *underinsured* the Plaintiffs' property.

E.    **State Farm's adjusters** wrongfully, negligently and/or recklessly withheld benefits due thereon to said Plaintiffs.

F.    **State Farm's** policy benefits were not fully disclosed to Plaintiffs, nor paid or provided to or for Plaintiffs, but were wrongfully, negligently and/or recklessly withheld and denied by **State Farm** to Plaintiffs.

9.    A. The **Second State Farm policy** of the subject policies sold to Plaintiffs by Defendants, said **State Farm Policy #99-BR-9353-7**, underinsured Plaintiffs' rental house located at **1046** Lafayette St. Biloxi, MS. MS, for dwelling and other losses covered by the policy, including, but not limited to, the risk of **WIND** and certain other damage and loss occurring in *Hurricane Katrina* to the Plaintiffs' loss.

B. A copy of this policy of is in Defendants' possession, was requested to no avail, and, on Defendants' production will be attached and incorporated herein as **Exhibit "B."**

C.    **State Farm's agents**, in each instance, on each policy sold and issued to Plaintiffs, wrongfully, negligently and/or recklessly *underinsured* the Plaintiffs' property.

D.    **State Farm's adjusters** wrongfully, negligently and/or recklessly withheld

3

benefits due thereon to said Plaintiffs.

E.    **State Farm's** policy benefits were not fully disclosed to Plaintiffs, nor paid or provided to or for Plaintiffs, but were wrongfully, negligently and/or recklessly withheld and denied by **State Farm** to Plaintiffs.

10.    A. These Defendants knew that Plaintiffs, like many other residents on the Mississippi Gulf Coast, purchased *each and all* of *these policies* for *full protection* from accidental direct physical loss from *hurricanes*.

B.  During the time each of Plaintiffs' policies were in effect, and during the 1990's, Defendants requested and received premium rate increases and/or retained risk (deductible) increases for each of Plaintiffs' policies from the Mississippi Department of Insurance.  Said increases were justified by Defendants by the hurricane risks associated with Coastal properties.  Defendants utilized hurricane-specific experience ratings and computer model projections of hurricane losses to corroborate its demands for such rate increases.

C.    During 1999 - 2005, Defendants informed the Plaintiffs and similarly situated insureds that it had a mandatory modification of the policy, which raised the deductible for "windstorm" and/or "hurricane" losses covered by each policy.

D. The increased deductible, commonly called the "windstorm" and/or "hurricane deductible," was automatically applied unless the homeowner or insureds paid more premiums for increased protection in the case of damaged caused by a hurricane.

E. In accordance with the terms of the policies, the Plaintiffs, like hundreds of other insureds, paid increased premiums to Defendants to eliminate the larger deductible so the policy would provide increased protection for hurricane damage.

F. Plaintiffs' payment of increased premiums was based on Defendants' representations that elimination of the  "windstorm" and/or " hurricane" deductible would increase coverage and decrease their retained risk (deductible) and exposure from losses from a hurricane.

G. Each subject policy was underwritten, marketed, sold, and issued to Plaintiffs by Defendants, which acted by, through, and/or in conjunction with, its agents, and/or representatives.

4

H. In selling each subject policy of insurance to the Plaintiffs, and collecting premiums under each policy, Defendants, by and through its agents, expressly and impliedly represented to Plaintiffs that they would have full and comprehensive coverage for any and all accidental direct physical losses, including those resulting from hurricanes, and including any and all damage proximately, efficiently, and typically caused by hurricanes, including but not limited to damage caused by hurricane driven winds and "storm surge."

I. Based upon the representations of coverage made by Defendants and their agents, and the express and implicit policy coverages, the Plaintiffs *reasonably relied* upon said representations and purchased each subject policy of insurance from Defendants, with a *reasonable expectation* and understanding that Defendants would pay for all losses caused by hurricanes.

J. Defendants intended for the Plaintiffs to rely upon the representations that they would be covered for hurricanes, and to accept and pay higher premiums and/or deductible based upon that reliance.

K. The Plaintiffs reasonably relied upon said representations and purchased, agreed to pay and did pay an increased premium for each subject policy of insurance from Defendants, with a reasonable expectation and understanding that Defendants would pay for all losses caused by hurricanes.

11. On or about August 29, 2005, within each subject policy period, the Plaintiffs' rental property was heavily damaged by an accidental direct physical loss - *Hurricane Katrina*.

12. The accidental direct physical loss to the Plaintiffs' property was caused by wind, at least in part, and loss would have occurred in the absence of water. Such loss triggered all coverages under each and/or all of the Plaintiffs' insurance policies' with Defendants in accordance with Mississippi law.

13. Defendants intentionally led the Plaintiffs to believe, during the time their claims were being adjusted, that it was acting in accordance with its obligation to conduct a good faith investigation before finally determining its liability to the Plaintiffs under each policy of insurance.

14. Unbeknownst to the Plaintiffs, and concealed from the Plaintiffs and other insureds, Defendants embarked during the period of August 29, 2005 through 2006, and thereafter,

5

on a calculated course of corporate conduct designed to deny the Plaintiffs' claims, and the claims of all Mississippi Gulf Coast homeowners and insureds like Plaintiffs whose insured properties had been destroyed and/or received "substantial damage."

15. After assessing the magnitude of the insureds' *Katrina* losses, Defendants intentionally and deliberately set forth on a course of action, concealed from the Plaintiffs and other insureds and property-and-homeowners, designed to reduce the Defendants' exposure for losses by abandoning Defendants' duty to fully investigate individual *Katrina* "substantial damage" cases; and by issuing 'across-the-board' or 'blanket' or uniform-and-baseless denials.

16. Defendants were directly involved in the unlawful and wrongful course of conduct that led to the denial of the Plaintiff's claims.

17. That conduct of "denials" which was implemented by Defendants *post- Katrina*, were not supported by the terms of the subject insurance contract or law.

18. The Defendants' procedures were intentionally designed to result, and did result, in denials of legitimate claims, including the Plaintiffs', and to save Defendants from the magnitude of payments that were rightfully due Plaintiff and others under the form of each policy issued to the Plaintiff, and hundreds of other Mississippi insureds.

19. The actions of Defendants concealed not only from Defendants' policyholders but also from the Mississippi Department of Insurance, was designed to, and did in effect shift the burden of establishing in "substantial damage" cases the cause of the accidental direct physical loss under each policy from the Defendants to the policyholder.

20. In accordance with a top-down policy, adopted by Defendants *post-Katrina*, after deliberation and calculation; and fraudulently concealed from the Plaintiff and other insured property-and-homeowners, Defendants adopted wrongful and separate claims procedures for handling claims of insureds who had flood insurance in addition to homeowner's and renter's insurance; canceled its adjusters' requests for engineering reports; failed to obtain engineer reports; replaced unfavorable engineer reports with favorable engineer reports; ignored engineer reports that proved homes in the community were destroyed by hurricane force winds before the storm surge arrived; required "revisions," including deletions and supplementations to exclude reference to "wind damage" of unfavorable engineer reports;

6

ignored findings in engineer reports that demonstrated coverage; adopted requirements for finding coverage that had not been utilized on *pre-Katrina* claims, and that were not contained within, nor supported by any subject policy of insurance; and issued blanket denials of coverage to policyholders whose homes were substantially and/or completely destroyed by the hurricane, including Plaintiffs'.

21.    Defendants' actions resulted in an intentional and deliberate abandonment of the duty to fully and competently investigate the claims of the Plaintiffs, and other insured *Katrina* "substantial damage" cases; and an intentional and deliberate abandonment of the duty to interpret and apply coverage in line with the terms and conditions of the subject policy of insurance, and Mississippi law.

22.    Defendants, knowing they had the opportunity and the obligation under Defendants' Contract of Insurance, and under applicable law, to have Plaintiffs' claim evaluated by an engineer or other competent professional, intentionally abandoned its obligation, and surrendered said right by denying the Plaintiffs' claim partially and/or completely without having their property properly investigated by an engineer.   Knowing the condition of Plaintiffs' property would necessarily be affected by the passage of time; Defendants' act in failing to send an engineer to inspect the property evidenced an intentional decision to abandon its obligation and opportunity to have Plaintiffs' property inspected by an engineer in a timely manner.

23.    The acts and omissions of the Defendants with regard to "investigation" of the cause of the loss incurred by the Plaintiffs, and Defendants' outright denial of coverage, constitute intentional, deliberate conduct accompanied by fraud and/or deceit as alleged herein.

24.    The conduct of Defendants, on information and belief, was motivated, in part, by Defendants' desire to (1) save money on substantial damage claims in violation of its duties to the Plaintiffs and similarly situated Defendants' insured property-and-homeowners and (2) shift liability for a large portion of the enormous *Katrina* losses from Defendants' Policies to NFIP flood program policies.

25.    Certain provisions of the subject policy of insurance, which Defendants  utilized to exclude coverage for the Plaintiffs' losses caused by *Hurricane Katrina*, when viewed in connection with the policy's express and implied intent to provide coverage for hurricane

losses, are ambiguous as a matter of law.

26.    Pursuant to the terms of Defendants' contracts of insurance and Mississippi law, Defendants' were obligated to pay Plaintiffs' claim unless it established that "loss would not have occurred in the absence of water." Since Defendants' did not meet that burden, its denial of all benefits is contrary to the terms of the insurance contract and Mississippi law.

27.    Defendants had the opportunity to prove what part of the loss, if any, would not have occurred in the absence of water, but chose not to do so, opting instead to adopt a course of conduct which was designed to wrongfully benefit the company at the expense of the Plaintiffs and others.

28.    Each of Defendants' subject non-flood policies of insurance could have, but did not contain an exclusion for "storm surge." Other insurance companies, in other parts of the country, and some insurance companies doing business in Mississippi, that intended to exclude losses caused by "storm surge" from particular policies of insurance, specifically included "storm surge" as a peril excluded from coverage. Despite industry recognition of "storm surge" as a separate and distinct peril, Defendants' did not include "storm surge" as an excluded peril in each subject non-Flood policy, each of which provided coverage for hurricanes - - which are known to cause damages by both wind and "storm surge."

## CAUSES OF ACTION

29.    In support of the following claims for relief, Plaintiffs hereby refer to, re-allege, and incorporate by reference, in each of the following causes of action, each and every paragraph of this Complaint, as set forth above and below.

## BREACH OF CONTRACT

30.    The loss the Plaintiffs sustained as a result of *Hurricane Katrina* was an accidental direct physical loss for which coverage is provided in each of the Defendants' policy[s] of insurance under Mississippi law.

31.    As provided by the law in the State of Mississippi, once the Plaintiffs provided to Defendants evidence of the accidental physical loss, it became Defendants' burden to prove what part, if any, of the loss was excluded under the terms of the all-risk policy.

32.    Defendants have not and cannot sustain its burden of proof because the Plaintiffs' loss was caused by wind. Defendants ignored evidence of *Hurricane Katrina's* straight-line

8

winds, tornados, severe thunderstorm cells, and airborne missiles in the neighborhood and vicinity of the Plaintiffs' property.

33      By issuing the subject policy to the Plaintiffs, and accepting premium payments from them, Defendants contractually agreed to pay for losses covered by the policy under Mississippi law. Defendants refused and continue to refuse to pay these Plaintiffs' legitimate claims, and thus breached its contract of insurance with the Plaintiffs. Furthermore, Defendants denied the legitimate claims of the Plaintiffs in bad faith and without an arguable reason in which said efforts to deny the Plaintiffs' entitled insurance proceeds give rise to independent torts. Defendants are liable to the Plaintiffs for breach of contract and owe the Plaintiffs damages under the terms of the contract of insurance and Mississippi law for policy limits, together with interest on said amounts from date of denial through the date of payment in an amount not less that 8%/year. Plaintiffs demand payment of the above, plus all other contractual benefits owed to them under the terms of each policy of Defendants.

## WAIVER AND ESTOPPEL

34.      Defendants had an obligation to establish what, if any, part of the loss fell under the terms of its policy exclusion(s). The only adjuster who inspected the Plaintiffs' property opined there was evidence of wind damage, and that it would be wrong for Defendants to refuse to pay for that wind damage. Defendants failed to have an engineer conduct a detailed, follow up inspection of the property. By ignoring the opinion of the only representative who actually inspected the property, and intentionally abandoning its obligation to establish what, if any, part of the loss was caused by an excluded peril after admitting there was evidence of wind damage, Defendants waived each of its right to exclude any part of the loss. Ultimately, Defendants denied the Plaintiffs' claim not because it determined Plaintiffs' property was completely destroyed by an allegedly excluded peril, but because Defendants determined they could not find "discernable wind damage," as part of a claims process adopted by Defendants after *Hurricane Katrina*, which process is totally contrary to the terms and conditions of each Defendants' subject policy[s] of insurance.

35.      By essentially declaring its burden of proof irrelevant and intentionally abandoning their obligation to establish what, if any, part of the loss was excluded, each of the Defendants waived its right to exclude any part of the loss. Each Defendants' conduct in

requiring evidence of "discernable wind damage" as a prerequisite to paying claims in total destruction or "substantial damage" cases, such as the Plaintiffs, and issuing denials of payments in the Plaintiffs' case and similar cases, constitutes a waiver of its right to litigate whether portions of the loss are excluded on a case-by-case basis.

36.    Defendants represented to Plaintiffs that Defendants were going to take care of everything and that the Plaintiffs would be ok, when Defendants had already adopted undisclosed and unsupported wind/water procedures by which coverage under each policy was to be issued a blanket denial in situations as the Plaintiffs'. These actions by the Defendants constituted fraudulent concealment and fraudulent misrepresentation. Defendants fraudulently concealed said fact and fraudulently induced the Plaintiffs to act to the detriment of their substantial rental property claim. Defendants should be estopped from denying that full coverage under each policy of insurance to the Plaintiffs and all similarly situated of Defendants' insureds.

## NEGLIGENCE / GROSS NEGLIGENCE / FAILURE TO INVESTIGATE

37.    Each of Defendants had a duty under their subject policies of insurance to fully investigate the claims of its insureds arising from *Hurricane Katrina*, including but not limited to the claims of the Plaintiffs, and to pay the Plaintiffs for covered losses. Defendants duties under each subject policy of insurance included, but were not limited to the duty to:

   a. Trained adjusters, engineers and other claims personnel to accurately investigate and determine the causation of losses suffered by Defendants' insureds, and to correctly apply each subject policy of insurance to the facts of particular losses, including the Plaintiffs', or hire competent, qualified professionals to perform its investigation;

   b. Have competent adjusters, engineers, or other qualified professionals perform a detailed inspection of the Plaintiffs' damages and losses, in a timely and professional manner;

   c. Complete its investigation, and pay the Plaintiffs for covered losses, within a reasonable amount of time;

   d. Pay the Plaintiffs for their losses and damages covered under the insurance policy;

10

e. Resolve any and all ambiguities in each subject policy of insurance in favor of coverage for Defendants' insureds, including the Plaintiffs;

f. Prove facts supporting, and the applicability of, any exclusion to coverage before excluding coverage for the Plaintiffs' losses caused by *Hurricane Katrina*;

g. Pay claims in accordance with the terms and conditions of each subject policy of insurance, and Mississippi law;

h. Treat all insureds in a consistent and equal manner;

i. The duty, implicit within every policy of insurance in the State of Mississippi, to treat the Plaintiffs, with good faith and fair dealing; and

j. Other duties to be shown at the trial of this matter.

38.    Defendants negligently, grossly negligently, maliciously, and/or with reckless disregard for the rights of the Plaintiffs, breached each of the duties outlined above.

## NEGLIGENCE / GROSS NEGLIGENCE / FAILURE TO INVESTIGATE AIDING AND ABETTING

39.    Defendants knew that decisions made by it as a result of consulting and claims services performed on behalf of Defendants would impact the rights of Plaintiffs and other of Defendants' policyholders. Defendants knew about, and participated in the claims conduct of other Defendants, and that said conduct constituted a breach of the duties owed to Plaintiffs.    Defendants gave substantial assistance and encouragement to other Defendants in the claims processes that led to the denial of Plaintiffs' claims, and the claims of hundreds of other similarly situated insureds.

40.    Defendants' actions caused and contributed to the damages of Plaintiffs, as set forth throughout this Complaint.

## TORTIOUS, BAD FAITH, AND CONTINUING BREACH OF CONTRACT

41.    The actions of Defendants in denying the Plaintiffs' claims were part of a fraudulent and deceptive scheme deliberately devised and intentionally implemented by Defendants after *Hurricane Katrina*, at the expense of the Plaintiffs and similarly situated insureds. Said actions constitute an intentional, wrongful, and tortious act.

42.    Defendants intentionally embarked on a corporate course of conduct of fraud and deceit designed to wrongfully deny the Plaintiffs, and other similarly situated policyholders,

11

from receiving the benefits to which they were entitled under Defendants' policy(s). The actions of Defendants were intentional wrongs, and/or were committed with reckless disregard for the rights of the Plaintiffs; and rise to the level of independent torts. Defendants' conduct constitutes the tort of "bad faith," or tortious breach of contract, under Mississippi law.

43.    A proper investigation of the Plaintiffs' claim by Defendants, their agents and/or representatives would have adduced evidence showing that the denial of the claim was without merit. Defendants intentionally and deliberately abandoned each of their duties to conduct a thorough investigation, ignored the opinions of the only Defendants' agents or representative who actually inspected the property, and adopted a new and improper standard for "substantial damage" claims not contained in the policy, in violation of its obligation to conduct a good faith investigation before a final denial of coverage and liability.

44.    Defendants negligently, grossly negligently, intentionally, maliciously, and/or with reckless disregard for the rights of the Plaintiffs, sought to interpret its own policy of insurance contrary to the actual terms and conditions thereof; contrary to Defendants' express and/or implicit representations that coverage would be provided for losses caused by hurricanes in exchange for additional consideration; and contrary to Mississippi public policy, all to the benefit of Defendants and to the detriment of the Plaintiffs and similarly situated insureds. Defendants denied coverage for losses caused by Hurricane Katrina based on alleged damage caused by hurricane driven "storm surge," with no proof that damage was caused independently by storm surge, without performing an investigation to prove what, if any damage was caused by "storm surge," and while ignoring evidence of wind damage. Defendants denied coverage for damage allegedly caused by "storm surge" when the subject policy of insurance did not include the separate and distinct peril of "storm surge" as a peril it intended to attempt to exclude, even though the industry, and other companies doing business in Mississippi, recognized that "storm surge" is an independent peril which must be specifically named to be excluded. Additionally, Defendants denied coverage for losses caused by a hurricane based upon the policy's "anti-concurrent" clause, at a time when Defendants had no proof that the Plaintiffs' losses "would not have happened in the absence of" an allegedly excluded loss, and continues to deny the

12

Plaintiffs' claims even after a Court of competent jurisdiction ruled Defendants' anti-concurrent clause is ambiguous.

45. Defendants, by and through Defendants' agents and employees, refused to pay for the Plaintiffs' covered losses caused by Hurricane Katrina without a legitimate, arguable, or reasonable basis. Defendants' breach of its duties under the subject policy of insurance, and other acts and omissions of Defendants addressed throughout this Complaint, constitute a bad faith breach of Defendants' duties and obligations to the Plaintiffs under the subject policy of insurance, as well as a bad faith breach of Defendants' implicit duty to treat its policyholders with good faith and fair dealing. Defendants' bad faith conduct is continuing, as Defendants continue to deny coverage to the Plaintiffs despite Court findings that Defendants' "anti-concurrent" clause is ambiguous, and despite the fact it never obtained evidence to support its denial of the Plaintiffs' claim for losses caused by the accidental direct physical loss that was Hurricane Katrina.

46. The actions of Defendants as alleged above constitute a violation of the implied covenant of good faith and fair dealing implicit in every contract of insurance, and bad faith breach of contract; and include post-litigation violations of its duties of good faith.

### FRAUDULENT CLAIMS PRACTICES

47. The great number of Defendants' insured homes destroyed to the foundation and/or "substantially damaged" by Hurricane Katrina left Defendants facing huge losses after Hurricane Katrina. Defendants made an initial assessment of the magnitude of the loss. Defendants then conceived and instituted a fraudulent course of claims practices to be applied to Katrina "substantial damage" claims, including that of the Plaintiffs.

48. The claims of the Plaintiffs, and the claims of hundreds of other of Defendants' insureds whose homes were rendered mere "substantially damaged" by Hurricane Katrina, were wrongfully denied pursuant to Defendants' Katrina specific "top down" scheme of fraudulent and deceptive claims practices.

49. Defendants in effect re-wrote their policies and claims procedures for "substantial damage" or total destruction cases where the property was contacted by storm surge during the Hurricane, and embarked on an intentional course of pre-litigation and post-litigation conduct, fraudulently concealed from Plaintiffs and others, deliberately designed to deny

13

legitimate claims covered under the Defendants' contracts and Mississippi law.

50.     Defendants' acts and neglect constitute a deliberate course of company-wide fraudulent post-*Katrina* claimshandling practices whereby Defendants intentionally undertook to defraud the Plaintiffs and other similarly situated insureds, as well as others.

51.     The scheme included post-*Katrina* modification of its coverage provisions, and employment by Defendants of improper or absent engineering procedures, which were fraudulently concealed from the Plaintiffs and other property-and-homeowners who were expecting and relying on good faith handling of their claims by Defendants.

52.     Said actions by Defendants constitute fraud, fraudulent concealment, and fraudulent inducement, as well as bad faith claims handling on an institutional basis in the handling by Defendants of *Katrina* "substantial damage" claims. The actions by Defendants were intended to, and did, result in the intentional and fraudulent denial of the claims of the Plaintiffs and others whose property-and-homes were completely destroyed by *Katrina*.

53.     Defendants committed actual fraud by (a) ordering or inducing Defendants' agents and adjusters' said wrongful claims handling conduct knowing of the conditions under which Defendants' agents' and adjusters' conduct was done and/or intending the consequences of said conduct, or (b) knowing that such conduct constituted tortious a breach of duty, or (c) giving substantial assistance to such  agents and adjusters in accomplishing a tortious result, and (d) Defendants' conduct, separately considered, constitutes a breach of duty to Plaintiffs.

54.     Defendants' aiding and abetting of the fraudulent claims scheme alleged herein caused or contributed to the damages of the Plaintiffs.

## FRAUD, FRAUDULENT INDUCEMENT

55.     Defendants induced the Plaintiffs, and other insureds in the coastal counties of Mississippi, to purchase insurance from Defendants; to agree to a higher deductible and/or higher premiums; to pay premiums to Defendants; and to not seek to place their insurance business with other insurance companies; based upon the express and implicit representations that the Plaintiffs, and other insureds in Mississippi, were purchasing coverage for losses caused by hurricanes. At the time that Defendants sold the subject policy of insurance to the Plaintiffs, accepted premiums for said policy, and required the

14

Plaintiffs to pay higher premiums for hurricane coverage or accept a higher deductible for hurricane coverage, Defendants (1) made express and implied representations that the Plaintiffs were purchasing coverage for hurricanes, (2) made express and implied representations that it would use competent professionals to investigate and adjust hurricane claims in an unbiased and fair manner, (3) made express and implied representations that it would adjust and pay the Plaintiffs' claims in a fair and timely manner, and in a manner consistent with the way all other hurricane claims in Mississippi were handled, and (4) made express and implied representations that Defendants would not deny coverage for an accidental physical loss in absence of reasonable proof that the loss was caused by an excluded loss, as set forth in the "losses not insured" section of each policy Defendants sold to the Plaintiffs. Defendants made these implied and/or express representations to the Plaintiffs with the intention that the Plaintiffs would rely upon the representations, would pay premiums to Defendants, and would not purchase coverage from other insurance carriers to secure coverage for said property against potential hurricane losses. The Plaintiffs relied on Defendants' express and/or implied representations, and the Plaintiffs purchased each subject insurance policy from Defendants instead of placing their insurance with another carrier, and paid premiums thereon, in reliance on those representations.

56.    Defendants' representations to the Plaintiffs, set out in the preceding paragraph, were false, and Defendants either knew they were false, and recklessly misrepresented the true facts by not making any effort to ensure that the representations would be complied with in the event of a catastrophic hurricane such as *Katrina*.  Defendants' acts and omissions, as set forth in all the preceding paragraphs, were contrary to the representations on which the Plaintiffs relied in purchasing each policy and to the benefit and financial gain of Defendants, which still has not paid the Plaintiffs' legitimate claims, and to the detriment of the Plaintiffs.

57.    As a direct and proximate result of Defendants' fraudulent misrepresentations, and Plaintiffs' reliance thereon, Plaintiffs were prevented from purchasing insurance from other insurance company(s) to cover losses in the event of a catastrophic hurricane, and have not been compensated for their losses.

15

## DAMAGES

58.    As the proximate result of the aforesaid wrongful conduct of Defendants, set forth in all of the preceding paragraphs which are fully incorporated herein, the Plaintiffs suffered actual damages in the amount of the full contract damages under each contract of insurance, as stated above, as well as other benefits that were due under the terms of the insurance policy. As a further proximate result of Defendants' breach of its duties under the subject policy of insurance, pattern and practice of deceptive conduct, and the other acts and omissions of Defendants, as described in all of the preceding paragraphs, the Plaintiffs suffered the damages discussed throughout this Complaint, including but not limited to loss of insurance premiums, severe mental and emotional distress, anxiety, worry, personal financial expenses, and other incidental damages all to the Plaintiffs' general damage, all of which were foreseeable to Defendants at the time of, and in the event of the acts and omissions discussed in the preceding paragraphs.

59.    As the proximate result of the aforesaid wrongful conduct of Defendants set forth in all of the preceding paragraphs which are fully incorporated herein, the Plaintiffs were forced to hire attorneys and incur substantial time and expense in pursuing this civil action to compel Defendants to pay the benefits due to the Plaintiffs under each policy. Delay in payment of claims is an integral, and for Defendants profitable, part of the scheme of fraudulent, tortious, and bad faith claims practices giving rise to this suit. Said delay, intended by Defendants, has exacerbated the extra-contractual damages suffered and incurred by the Plaintiffs, for all of which damages should be awarded in this action.

60.    Some or all of the acts and omissions of Defendants described in all of the preceding paragraphs, which are fully incorporated herein, were grossly negligent; and/or were attended by circumstances of misrepresentations of material facts; malice; willful and wanton conduct; and/or were committed with gross, reckless, and /or callous disregard for the rights of the Plaintiffs. As such, the Plaintiffs are entitled to an award of punitive or exemplary damages from and against the Defendants, in an amount sufficient to punish Defendants for their wrongdoings, and to deter Defendants, and others similarly situated; from committing similar outrageous acts in the future.

61.    The acts and omissions of Defendants further justify the imposition of

16

consequential damages and attorneys' fees, in addition to punitive or *exemplary* damages.

WHEREFORE, Plaintiffs sue and demand judgment from and against the Defendants, jointly and severally, for actual and compensatory damages in the amount of contract damages due under the policy of insurance, and for extra-contractual damages in an amount sufficient to compensate the Plaintiffs for the anxiety, worry, mental and emotional distress, lost time, personal expenses and other incidental and consequential damages they have suffered as a result of Defendants' conduct, plus consequential damages they have suffered as a result of Defendants' conduct, including attorneys' fees and expenses incurred in the prosecution of this claim, plus pre-judgment interest and post-judgment interest in the amount allowed by law, but not less than 8% per annum.

Plaintiffs further pray that punitive and/or exemplary damages be assessed against the Defendants in an amount sufficient to punish Defendants for such wrongful conduct, and to deter like conduct in the future, and to serve as an example and a warning to others, so as to deter other insurance companies from engaging in a similar course of conduct. Plaintiffs further pray for any and all additional relief, in favor of Plaintiffs, deemed appropriate by this Court. A **Jury Trial** is demanded.

**John Brauchle and Abigail Brauchle**, Plaintiffs

BY: _____

Matt G. Lyons, Esq. [MSB: 1713]

Matt G. Lyons, Esq. [MSB: 1713]
910 Washington Ave.
Ocean Springs, MS 39564
Tele:   (228) 872-1855
Fax:    (228) 872-1857

17

# STATEMENT OF LOSS

Claim Number _____ 24-Z507-248 _____

Insured _____ BRAUCHLE, JOHN JR & ABIGAIL _____

## COVERAGE A - BUILDING          Limit of Liability $ _____ $97,805.00 _____

Description
Revised State Farm estimate _____ Amount $ _____ 11,250.66 _____

Total A                           $ _____ 11,250.66 _____

## COVERAGE B - CONTENTS          Limit of Liability $ _____ 73,354.00 _____

Description
Food Loss _____ Amount $ _____ 500.00 _____

Total B                           $ _____ 500.00 _____

## COVERAGE C - LOSS OF USE        Limit of Liability $ _____

Description
Additional Living Exepnses _____ Amount $ _____ 2,500.00 _____

Total C                           $ _____ 2,500.00 _____

Comments/Supplements:

| | |
|---|---|
| Total A + B + C | 14250.66 |
| Plus Special Coverage | |
| Total Loss | 14250.66 |
| Less Depreciation - Cov. A | 1,371.02 |
| Less Depreciation - Cov. B | |
| Subtotal | 12879.64 |
| Less Deductible | 1,914.00 |
| Less Prior Payments | 3,274.71 |
| Total Payable | $7690.93 |

_____ Brian Anderson _____          _____ 12/14/05 _____
Name                                   Date

104858.4 Rev. 02-26-2003

**EXHIBIT
"A"**

## STATEMENT OF LOSS

Claim Number _____ 24-Z507-248 _____

Insured _____ Brauchle, John & Abigail _____

**COVERAGE A - BUILDING**          Limit of Liability $ _____ $97,805.00

Description
As per State Farm estimate    $ _____ Amount $ _____ 6,207.28
_____     _____
_____     _____
_____     _____
_____     _____
_____     _____
_____     _____
_____     _____
_____     _____
_____          Total A          $ _____ 6,207.28

**COVERAGE B - CONTENTS**          Limit of Liability $ _____

Description
_____     Amount $ _____
_____     _____
_____     _____
_____     _____
_____     _____
_____     _____
_____     _____
_____     _____
_____          Total B          $ _____ 0.00

**COVERAGE C - LOSS OF USE**          Limit of Liability $ _____

Description
_____     Amount $ _____
_____     _____
_____     _____
_____          Total C          $ _____ 0.00

|  | |
|---|---|
| Total A + B + C | 6,207.28 |
| Plus Special Coverage | |
| Total Loss | 6,207.28 |
| Less Depreciation - Cov. A | 1,018.57 |
| Less Depreciation - Cov. B | |
| Subtotal | 5,188.71 |
| Less Deductible | 1,914.00 |
| Less Prior Payments | |
| Total Payable | $3274.71 |

Comments/Supplements:

_____          _____
          Name                                          Date
                                                   10/17/05

104668.4 Rev. 02-26-2003

**State Farm Insurance Companies**

BRAUCHLE, JOHN                                                        10/19/2005

**Explanation of Building**
**Replacement Cost Benefits**                    [Barcode Only]
**Homeowner's Policy**

To:  Name:        BRAUCHLE, JOHN
     Address:     1044 LAFAYETTE ST
     City:        BILOXI
     State/Zip:   MS, 39530-1733

Insured:  BRAUCHLE, JOHN                    Claim Number:  24-Z507-248
Date of Loss:  8/29/2005                    Cause of Loss:  HURRICANE

The estimate to repair or replace your damaged property is $ _6207.28_ and includes a deduction for
depreciation of $ _848.81_ .  Our claim payment to you of $ _3,274.71_ is for the actual cash
value (repair/replacement cost less depreciation) of the damaged part of property at the time of loss, less any
deductible that may apply.

The estimate you received from us details the depreciation applied to your loss.  If you cannot have the
repairs completed for the repair/replacement cost amount estimated, please contact your claim representative
prior to beginning repairs.

The terms and conditions of your Homeowner's insurance policy provide for certain building replacement
cost benefits (the depreciation deduction of $ _1018.57_ ), however, your policy requires that
repairs/replacement be completed before these benefits may be claimed.  We will then pay the covered
additional amount you actually and necessarily spent to repair or replace the damaged part of the property, up
to the limit of liability, that exceeds what we have already paid you.

**To obtain replacement cost benefits for this loss, you must:**

1. Complete the actual repair or replacement of the damaged part of the property within two years of
   the date of loss; and

2. Notify us within 30 days after the work has been completed.

3. Confirm completion of repair or replacement, by submitting invoices, receipts or other
   documentation to your Agent or claim office.

All policy provisions apply to your claim.

Claim Representative:  Calvert, Barney          Date: _10/19/05_

120563.2    Rev.  07-13-2004

11/08/2007  21:21    2284357999                    STATE FARM INSURANCE              PAGE  82

## STATE FARM INSURANCE COMPANIES®

State Farm Fire and Casualty Company

100 State Farm Parkway
Birmingham, AL 35297-0001

E-1179-P292  FR

BRAUCHLE, JOHN JR & ABIGAIL M
1049 LAFAYETTE ST
BILOXI MS  39530-1733

**RENEWAL CERTIFICATE**

| | |
|---|---|
| POLICY NUMBER | 99-BR-9353-7 |
| Rental Dwelling Pol - Special Form | |
| MAY 20 2005 to MAY 20 2006 | |

| DATE DUE | PLEASE PAY THIS AMOUNT |
|---|---|
| MAY 20 2005 | $608.00 |

### Coverages and Limits

**Section I**

| | | |
|---|---|---|
| A | Dwelling | $41,700 |
| | Dwelling Extension | 4,170 |
| B | Personal Property | 2,085 |
| C | Loss of Rents | Actual Loss |

**Deductibles - Section I**

| | |
|---|---|
| Basic | 1,500 |

**Section II**

| | | |
|---|---|---|
| L | Business Liab (per occurrence) | $300,000 |
| | (annual aggregate) | 600,000 |
| M | Medical Payments to Others | 1,000 |
| | (each person) | |

Location:  1046 LAFAYETTE ST
           BILOXI MS
           39530-1733

**Forms, Options, and Endorsements**

| | |
|---|---|
| Special Form 3 | FP-8103.3 |
| Debris Removal Endorsement | FE-7540 |
| Fungus (Including Mold) Excl | FE-5722 |

| | |
|---|---|
| Annual Premium | $608.00 |
| Amount Due | $608.00 |

**Premium Reductions**
Your premium has already been reduced
by the following:

| | |
|---|---|
| Home Alert Discount | 38.00 |

Inflation Coverage Index:  168.9



*Thanks for letting us serve you...*
ERROL BRADLEY
(228) 435-2258                    Prepared  APR 05 2005

38 3287 5838

See reverse side for important information.
Please keep this part for your record.

IF YOU HAVE MOVED, PLEASE CONTACT YOUR AGENT.    E-1179-P292  F

PLEASE RETURN THIS PART WITH YOUR
CHECK MADE PAYABLE TO STATE FARM.

IN THE CIRCUIT COURT OF HARRISON COUNTY, MISSISSIPPI
SECOND JUDICIAL DISTRICT

JOHN BRAUCHLE AND ABIGAIL BRAUCHLE                                       PLAINTIFFS

VS.                                                                      CAUSE NO. A2402-08-184

STATE FARM FIRE AND CASUALTY CO.,
STATE FARM INS. COS., AND JOHN DOES 1-X
AND JANE DOES 1-X                                                        DEFENDANTS

### STIPULATION OF DISMISSAL

Come now, the plaintiffs, and pursuant to MISS. R. CIV. P. 41(a)(1)(ii), stipulate to the

dismissal of all claims against defendant "State Farm Insurance Companies" *only*. Plaintiffs

expressly maintain and do not dismiss their claims, causes, and allegations against State Farm Fire

and Casualty Company and all other defendants. Each party is to bear its own costs.

This the 5 day of May, 2009.


MATT G. LYONS, MSB #1713
Attorney at Law
910 Washington Avenue
Ocean Springs, MS 39564
Attorney for Plaintiffs


JOSIAH DENNIS COLEMAN, MSB #99547
Attorney at Law
P.O. Drawer 668
Oxford, MS 38655
Attorney for Defendant State Farm Fire and Casualty Company

FILED
MAY 0 5 2009
GAYLE PARKER, CIRCUIT CLERK
By _____ DC

# EXHIBIT B